FILED

2014 Jul-30  AM 11:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **CORA HODGE, o/b/o J.W.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **7:12-cv-3717-AKK** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social** | ) | |
| **Security,** | ) | |
| | ) | |
| **Defendant.** | | |

## MEMORANDUM OPINION

Plaintiff Cora Hodge ("Hodge") brings this action on behalf of her son, J.W. ("the Claimant"), pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the court will affirm the decision denying benefits.

### I.  Procedural History

Hodge protectively filed an application on behalf of her minor child, J.W., for the child's Supplemental Security Income ("SSI"), alleging a disability onset date of May 1, 2010, due to a learning disability. (R. 15, 111). After the SSA denied his claim, the Claimant requested a hearing before an ALJ. (R. 49-50). The ALJ subsequently denied the Claimant's claim, (R. 12-27), which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1-6). Hodge then filed this action for judicial review pursuant to 42 U.S.C. § 1383(c)(3). Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the

Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

A claimant under the age of eighteen is considered disabled if the claimant has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which is expected to result in death, or which has lasted or is expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(I). The

3

regulations define the statutory standard of "marked and severe functional limitations" in terms of "listing-level severity."  20 C.F.R. §§ 416.902, 416.906, 416.924(a), 416.926a(a); see 20 C.F.R. pt. 404, subpt. P, app. 1 (hereinafter "listing(s)").  The Commissioner has developed a specific sequential evaluation process for determining whether a child claimant is disabled. 20 C.F.R. § 416.924.  The three-step process requires a child to show:  (1) that he is not working; (2) that he has a "severe" impairment or combination of impairments; and (3) that his impairment or combination of impairments is of listing-level severity, that is, the impairments meet, medically equal, or functionally equal the severity of an impairment in the listings.  20 C.F.R. § 416.924.

If a child claimant is not working and has a severe impairment, the ALJ must determine if the child's impairments meet or medically equal an impairment listed in the listings.  20 C.F.R. § 416.924(a)-(d).  An impairment medically equals a listing "if it is at least equal in severity and duration to the criteria of any listed impairment."  If the claimant's impairments do not meet or medically equal a listed impairment, the ALJ must then determine if the child's impairments are, instead, functionally equivalent in severity. 20 C.F.R. §§ 416.924(d), 416.926a(a).  For the child's impairments to

4

functionally equal a listed impairment, they must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).  The ALJ considers the child's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(I)-(vi).  If the impairments do not satisfy the duration requirements, or do not meet, medically equal, or functionally equal one of the listings in the Regulations, a finding of not disabled is reached and the claim is denied.  See 20 C.F.R. § 416.924(d)(2).

## IV.  The ALJ's Decision

In performing the three step analysis, initially, the ALJ determined that the Claimant has not engaged in any substantial gainful activity since his alleged disability onset date.  (R. 18).  Next, in satisfaction of Step Two, the ALJ found that the Claimant suffers from the severe impairments of "learning disability and attention deficit hyperactivity disorder (ADHD)." *Id.*  Finally, at Step Three, the ALJ concluded that the Claimant's impairments did not

meet, medically equal, or functionally equal any of the listed impairments and, therefore, found that the Claimant was not disabled.  *Id.*

## V. Analysis

The court now turns to Hodge's contentions that the ALJ erred in (1) failing to find the Claimant met listing 112.05C; (2) rejecting the opinion of Dr. John Goff, Ph.D.; and (3) relying on the scores of the UNIT IQ test from the Claimant's school.  *See* doc. 8 at 6-12.  The court addresses each contention in turn.

### A.    Listing 112.05C

Hodge contends the ALJ failed to consider whether the Claimant met listing 112.05C.  Doc. 8 at12.  To meet listing 112.05, the Claimant must first show that his impairment satisfies the diagnostic description in the introductory paragraph, *see* listing 112.00A, which describes "*Mental Retardation*: characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning."  Listing 112.05 (emphasis in original).  In addition, listing 112.05C requires the Claimant to have a "valid verbal, performance or full scale IQ of 59 or less."  Significantly, the Claimant bears the burden of showing that his impairment meets or equals a listed impairment. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).  To do so, the Claimant's

impairments must "meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).

Contrary to Hodge's contention, the ALJ specifically found that the Claimant "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (R. 18).  The ALJ's reasoning for this finding is clear because he found the Claimant had only a learning disability, rather than the requisite mental retardation.  (R. 18).  While the ALJ did not specifically reference listing 112.05C, because the Claimant must show that he is mentally retarded to meet the listing, this is essentially a finding that the Claimant does not meet listing 112.05C.  *See Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) (ALJ "is not required [to] mechanically recite the evidence leading to [his] determination," because "[t]here may be an implied finding that a claimant does not meet a listing") (citing *Edwards v. Heckler*, 736 F.2d 625, 629 (11th Cir. 1984).  In addition, the ALJ's finding is supported by substantial evidence, including the report of Dr. Donald Blanton, Ph.D., the SSA consultative mental examiner, who diagnosed only a learning disability in reading and math, (R. 169), and the Claimant's second grade report card, which showed the following year end grades:

Language 72, Math 86, Physical Ed 97, Reading 79, Science 81, Social Studies 79, and Spelling 79. (R. 149). This evidence belies any contention by Hodge that his son meets listing 112.05C. Accordingly, the ALJ did not err in his consideration of listing 112.05C.

B.    The Opinion of Dr. Goff

Hodge next contends the ALJ articulated insufficient grounds for rejecting the findings of Dr. Goff, who examined the Claimant at the request of his attorney, that the Claimant had a full scale IQ of 58, and has mild mental retardation. (R. 206-67). To determine the weight, if any, to give Dr. Goff's opinions, the ALJ was required to consider several factors, including whether Dr. Goff (1) had examined the claimant; (2) had a treating relationship with the claimant; (3) presented medical evidence and explanation supporting his opinion; (4) provided an opinion that is consistent with the record as a whole; and (5) is a specialist.  20 C.F.R. § 416.927(c).  Here, in rejecting Dr. Goff's opinion, the ALJ emphasized the lack of a treating relationship:

> As for the opinion of Dr. Goff, it is emphasized that the claimant underwent the examination that formed the basis of the opinion in question not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal. Further, the doctor was presumably paid for the report. Although such evidence is certainly

8

> legitimate and deserves due consideration, the context in which it
> was produced cannot be entirely ignored.

(R. 22).  However, the ALJ did not exclusively rely on Dr. Goff's status as a

nontreating source because this statement came after the ALJ discussed other

evidence that was inconsistent with Dr. Goff's findings.  That evidence included

the opinion of the Claimant's second grade teacher that the Claimant could

perform on grade level with help at home, (R. 20, 138), and the Claimant's

second grade report card.  (R. 20, 149).  The ALJ also noted that Dr. Blanton

diagnosed only a learning disability in reading and math, (R. 20, 169), and that

the Claimant achieved a full scale IQ of 91 on the Universal Nonverbal

Intelligence Test (UNIT)[1] on May 6, 2010.  (R. 20, 144).  According to Dr.

Blanton, based on his mental status examination of the Claimant, the Claimant's

UNIT "IQ score appeared appropriate."  (R. 168).  As the ALJ correctly noted,

this evidence is inconsistent with Dr. Goff's findings.  Significantly, it supports

the ALJ's reasonable finding that the Claimant had only a learning disability.

---

[1]   The Universal Nonverbal Intelligence Test (UNIT) is designed to
provide a fair, comprehensive, standardized, and norm-referenced
assessment of general intelligence with entirely nonverbal
administration and response formats. A major goal in developing UNIT
was to ensure fairness for all students, irrespective of race, ethnicity,
sex, language, country of origin, and hearing status.

http://assess.nelson.com/test-ind/unit.html

Therefore, the ALJ did not err in failing to adopt Dr. Goff's findings because an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983).

      C.    The Unit IQ Test Score.

      Hodge's final contention is that the ALJ  erred in relying on the scores of the UNIT IQ test because it does not comply with requirements set forth in the regulations.  Doc. 8 at 10.  Specifically, Hodge asserts that the Unit IQ test did not comply with listing 112.00D(6) because it is not known whether the individual who administered the test was "qualified" within the meaning of the regulation,[2] or with listing 112.00D(15) because the UNIT test is a nonvervbal test.[3]  Doc. 8 at 10-11.  Unfortunately, Hodge's contention misses the mark because the Claimant's IQ score is relevant only if he satisfies the diagnostic description of listing 112.05, i.e., he must show that he is mentally retarded. Listings 112.00A, 112.05.  Because the ALJ reasonably rejected Dr. Goff's

---

      [2]  Listing 112.00D(6) provides that "[r]eference to a 'standardized psychological test' indicates the use of a psychological test measure that . . . is individually administered by a qualified specialist."

      [3]  Listing 112.00D(15) provides that "[g]enerally, it is preferable to use IQ measures that are wide in scope and include items that test both verbal and performance abilities."

diagnosis of mental retardation and found the Claimant only had a learning disability, the Claimant's IQ scores were irrelevant to the ALJ's determination regarding listing 112.05C.  Moreover, Hodge's implication that the ALJ was bound to adopt either Dr. Goff's IQ scores or the Unit IQ scores is incorrect because, ultimately, the Claimant bears the burden of presenting medical evidence showing his impairments meet listing 112.05C.  Consequently, it is the Claimant who must furnish evidence establishing an IQ satisfying the listing, and the ALJ is under no obligation to establish the Claimant's IQ, show that the Claimant's IQ was too high to satisfy the listing, or adopt either Dr. Goff's scores or the UNIT scores. *Barron*, 924 F.2d at 229.  Therefore, the ALJ did not err in his consideration of the Claimant's UNIT IQ scores.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that the Claimant is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**.  A separate order in accordance with the memorandum of decision will be entered.

11

Done the 30th day of July, 2014.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE